IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| RICHARD BATDORF, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil No. 13-0316-CG-B |
| ATHENS ARCHERY, INC., | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the defendant Athens Archery, Inc.'s ("Athens Archery") motion for summary judgment (Doc. 33), the plaintiff Richard Batdorf's ("Batdorf") response in opposition (Doc. 48), and Athens Archery's reply (Doc. 49). For the reasons stated below, Athens Archery's motion for summary judgment is due to be **GRANTED**.

## FACTUAL BACKGROUND

On June 6, 2005, Batdorf applied for a patent for certain technology involving a dual cam system[1] where the power cords for the bow connect directly from cam to cam. (Doc. 48-1 at 42). In July 2008, Batdorf contacted Athens Archery's' president, Jason Hudkins ("Hudkins"), about the archery bow cam system he claimed to have designed. (Doc. 35 Ex. A at 28, Exs. 1, 2; Doc. 38 Ex. B at 19). This discussion led to

---

[1] A cam system is part of the pulley system of a compound bow. An example of the cam system at issue here was made an exhibit to the deposition of Jason Hudkins. (See photograph at Ex. A, Hudkins dep., Ex.5). The cams are identical mirror images of each other: one is an upper cam on a bow and one is a lower cam, depending on whether the bow is for a left-handed or right-handed person. (*See id.,* pp. 42-44).

Hudkins' decision to use Batdorf's design in developing bows for Athens Archery. (Doc. 35 at 36-38; Doc. 38 Ex. B at 19-20).

On July 29, 2008, Batdorf sent a proposed license agreement to Athens Archery. (Doc. 39 Ex. 9; Doc. 40). The license agreement included the following terms: (1) payment of $5,000 from Athens Archery to Batdorf upon execution and subsequent annual pre-payments of $5,000 per year; and (2) a $10 royalty payment per cam system sold, deducted from the pre-paid minimum payment per year, until the minimum payment amount is exceeded. (Doc. 36 Ex. 7).

After receiving the license agreement, Hudkins suggested four changes to the contract: (1) correction of the named party to the agreement; (2) clarification on how to calculate the license fee per bow; (3) correction of the month during which the license payments were to be made by Athens Archery to Batdorf; and (4) verification that if Athens Archery were ever sold, the license would be transferable to the buyer. (Doc. 35 at 71-73; Doc. 36 Exs. 6, 7). Batdorf agreed to these changes and instructed Hudkins to write the requested changes on the license agreement and initial them. Id. On August 14, 2008, Hudkins signed and returned the license agreement to Batdorf with a check for $5,000 as an upfront payment for the license and coverage for the first 500 sets of bow cams. (Doc. 36 Ex. 7; Doc. 38 at 59).

After mailing the amended license agreement, Hudkins posted a photograph of the prototype bow on an internet archery forum. (Doc. 35 at 79-80). Two individuals then contacted Hudkins claiming that they each owed some of the rights to the design of the prototype bow's cam system. (Doc. 35 at 80-83). Based on these representations, Hudkins sent an email to Batdorf on August 15, 2008, saying that

he was "going to have to put a stop payment on the check" and instructed Batdorf not to deposit or cash the check. (Doc. 35 at 81-88; Doc. 36 Ex. 9; Doc. 38 at 62).

The following day Hudkins called Batdorf to explain the situation in more detail. (Doc. 35 at 91-93). Hudkins alleges that he "made it very clear to [Batdorf] that I could not enter into an agreement with him; and I told him to, you know, just send the check back or tear it up." Id.

Hudkins emailed Batdorf again on August 16, 2008, saying that the license agreement needed to be changed to reflect that it would not go into effect unless Batdorf was awarded the patent.[2] (Doc. 34 at 104-07; Doc. 36 Ex. 10). Batdorf had not signed the license agreement at this time. (Doc. 36 Ex. 7). The license agreement was never amended to reflect Hudkins' requested change. (Doc. 35 at 105; Doc. 36 Ex. 7).

The stop payment on the $5,000 check was never removed, and Batdorf has not received a replacement check. (Doc. 35 at 88-89; Doc. 38 at 65, 73; Doc. 39 Ex. 13). Batdorf alleges he signed the license agreement on August 29, 2008, and mailed it to Hudkins. (Doc. 38 at 24-25). However, Hudkins denies receiving a copy of the license agreement from Batdorf, and Batdorf has no proof of delivery. (Doc. 35 at

---

[2] The email stated in pertinent part:

> As far as the license if you need me to keep it sign it and send it back I have no problem if you would add a paragraph stating that if the IP doesn't issue it is null and void. I think it is a no Brainer it still gives you a license payment and I will put the money in escrow and send you a check within 30 days. I will tell you this for every bow I build I will put 10.00 in an escrow account so once the [patent] goes through a check will be sent.

See Doc. 36 Ex. 10.

105-06). Subsequently, Athens Archery entered into a license agreement with Rex Darlington to license cams in 2010. (Doc. 35 at 75-78, 115, 129; Doc. 36 at 148-50, Exs. 8, 11; Doc. 38 at 43-44).

On July 17, 2012, Batdorf's patent was issued by the United States Patent Office on his bow cam system. (Doc. 37 Ex. 12). Once Batdorf knew that his patent was going to be issued, he emailed Hudkins asking Athens Archery to perform under the license agreement. (Doc. 35 at 125-26; Doc. 37 Ex. 13). Batdorf claims Athens Archery owes him license fees of $10 per bow for 2,887 bows produced using his technology. Batdorf sued Athens Archery in the U.S. District Court for the Eastern District of Tennessee on August 3, 2012, for patent infringement and two breach of contract claims, including for breach of license agreement at issue in this action, but dismissed that case in January 2013. (Doc. 38 at 16-17; Doc. 39 Ex. 1; Doc. 42).

On June 14, 2013, Batdorf filed this action against Athens Archery alleging breach of the license agreement. (Doc. 1). Four months later, on September 13, 2013, Batdorf filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 38 at 13; Doc. 43). Batdorf was represented by counsel in the bankruptcy matter. (Doc. 43). In Schedule B of that bankruptcy petition, Batdorf did not disclose the instant breach of license agreement action against Athens Archery as "Personal Property," despite that Debtor Schedule's prompt for "[o]ther contingent and unliquidated claims of every nature." (Doc. 43 at 18-20). Likewise, in the section of the bankruptcy petition labeled "Statement of Financial Affairs," Batdorf answered "none" when asked to "[l]ist all suits and administrative proceedings to

4

which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Doc. 43 at 10). Batdorf signed both the bankruptcy petition and Statement of Financial Affairs under penalty of perjury. (Doc. 43 at 13). Batdorf claims that he believed he had disclosed this action by listing a "claim for patent disputed" as an asset under his schedule for personal property. The bankruptcy court confirmed Batdorf's Chapter 13 plan on November 15, 2013. (Doc. 44).

At Batdorf's deposition on January 21, 2014, the defense counsel discussed the improper disclosure of this action on the bankruptcy petition. On January 27, 2014, Athens Archery filed an amended answer adding judicial estoppel as a defense. (Doc. 28). On February 3, 2014, Batdorf amended his Statement of Financial Affairs to include the instant action. (Doc. 45).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)

(quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608

(11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response...must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## LEGAL ANALYSIS

### A. Judicial Estoppel

Athens Archery argues that the doctrine of judicial estoppel prevents Batdorf from pursuing the breach of license agreement claim in the district court, having sworn in the bankruptcy court that no claims existed. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). This doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire, 532 U.S. at 749, 121 S.Ct.

1808 (internal quotations omitted). Although there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," the U.S. Supreme Court has elucidated several factors which typically inform the decision whether or not to apply judicial estoppel in a particular case. Id. at 751, 121 S.Ct. 1808. "First, a party's later position must be 'clearly inconsistent' with its earlier position." Id. at 750, 121 S.Ct. 1808 (string citation omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled...' " Id. (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982)). "[T]hird...is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751, 121 S.Ct. 1808

Courts in the Eleventh Circuit consider two additional factors in applying the doctrine of judicial estoppel to a particular case. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). However, these two factors are not "inflexible or exhaustive," and therefore the court must give due consideration to all of the circumstances of a particular case when considering the applicability of judicial estoppel. Id. at 1286.

As a general matter, "while privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." Id. This is because judicial

estoppel protects the integrity of the judicial system, and not the litigants. Id. (quoting Ryan Operations G.P. v. Santiam–Midwest Lumber Co. et al., 81 F.3d 355, 362 (3rd Cir. 1996)).

"The duty to disclose all assets and potential assets to the bankruptcy court is a continuing duty that does not end once the forms are submitted." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) (quoting Burnes, 291 F.3d at 1286); Burnes, 291 F.3d at 1286 ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system.") (internal quotations and citations omitted)).

**1. Statement submitted under oath in a prior proceeding**

Batdorf argues that "the evidence supports a finding that Plaintiff's position in his pending bankruptcy case in not clearly inconsistent with his position in the instant case." See Doc. 48 at 8. Specifically, Batdorf asserts that he believed he adequately disclosed the instant action because he listed "a claim for a patent dispute" as an asset in Schedule B of his bankruptcy petition. However, this disclosure is not sufficient to put the bankruptcy court on notice of Batdorf's suit in district court.

The instant action is a claim against Athens Archery for breach of license agreement, not a dispute over Batdorf's patent. In response to questions in the bankruptcy petition, Batdorf unambiguously represented to the bankruptcy court that he had no contingent or unliquidated claims of any nature and that he was not a party to any suit within one year immediately preceding the filing of the bankruptcy case. Although the patent dispute and license agreement are related in

9

sense, Batdorf's failure to identify his claim against Athens Archery for breach of license agreement in his sworn, signed bankruptcy schedules amounts to the taking of inconsistent positions under oath in a prior proceeding. Therefore, this matter turns upon the question of intent.

**2. Intent**

Judicial estoppel may be applied only in situations involving intentional manipulation of the courts, and not when the litigant's contradictory positions are "the product of inadvertence or mistake." Burnes, 291 F.3d at 1287 (quoting Matter of Cassidy, 892 F.2d 637, 642 (7th Cir. 1990)). In cases where a debtor fails to disclose a claim or potential claim in a bankruptcy proceeding, the court will find the failure inadvertent only when the debtor lacks knowledge of the undisclosed claim or has no motive for its concealment. Burnes, 291 F.3d at 1287 (citing In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999)). Otherwise, intent may be inferred. Id.

It is undisputed that Batdorf knew about his claim for breach of license agreement against Athens Archery when he filed for bankruptcy as Batdorf filed this action four months before he filed his bankruptcy petition. Nor can Batdorf "deny a motive for concealing this claim, given Eleventh Circuit authorities expressly recognizing a debtor's direct financial motive for doing so." See Hands v. Winn-Dixie Stores, Inc., CIV.A. 09-0619-WS N, 2010 WL 4496798, at *4 & *4 n.7 (collecting Eleventh Circuit cases). Batdorf appeared to gain an advantage when he failed to list his claim against Athens Archery for breach of license agreement in his Debtor's Schedule because, by omitting the claim, he could keep any proceeds

10

resulting from his claim for himself and not have them become part of the bankruptcy estate. See Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1296 (11th Cir. 2003); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).

Bartdorf argues that "[t]he initial disclosure of the dispute and the subsequent amendment" of the bankruptcy petition mitigate against a determination that he intended to conceal the action. See Doc. 48 at 8. The court disagrees. Batdorf's initial disclosure of the patent dispute made no reference to any claim against Athens Archery for breach of license agreement. Not only did Batdorf fail to disclose the instant action despite unambiguous questions in the bankruptcy petition requiring him to do so, but he did not attempt to modify his bankruptcy petition until after Athens Archery filed an amended answer adding the defense of judicial estoppel. See, e.g., Barger, 348 F.3d at 1297 ("Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds."); De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1292 (11th Cir. 2003) (claimant's effort to "amend his bankruptcy filings [ ] only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only after he is caught concealing them") (citation omitted)); Burnes, 291 F.3d at 1288 (correction of bankruptcy schedules after omission is subject of dispositive motion "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors'

assets"). Furthermore, Batdorf did not request approval of his counsel by bankruptcy court until two weeks after Athens Archery moved for summary judgment on judicial estoppel grounds. (Doc. 49 Ex. A)

Bartdorf also argues that his bankruptcy counsel's statement that "this suit was disclosed in the schedules" in an email sent to Batdorf's counsel in this action supports a finding that he intended to disclose the case. Even assuming for the purpose of the argument that this statement is not inadmissible hearsay, Batdorf is bound by any error of his attorney in not including the claim in his bankruptcy schedules. Barger, 348 F.3d 1289, 1295 (recognizing that although the debtor informed his attorney about his pending lawsuit, the attorneys omission of the claim from the schedule of assets was "no panacea"); see also Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1286, 8 L.Ed.2d 734 (1962). ("[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."); Cavaliere v. Allstate Ins. Co., 996 F.2d 1111, 1115 (11th Cir. 1993) ("This Court rejected that argument even though such a result appear[ed] to penalize innocent clients for the forgetfulness of their attorneys.") (citations omitted)). For the same reason, Batdorf's assertion that he believed, in relying on an attorney to prepare his bankruptcy petition, that the description "a claim of patent disputed" fully disclosed this action fails to show inadvertence or mistake.

Accordingly, the court finds that Batdorf's knowledge of his claim against Athens Archery for breach of license agreement and his motive to conceal is sufficient evidence from which to infer his intentional manipulation. See Burnes,

291 F.2d at 1287. The court further finds that the doctrine of judicial estoppel is appropriate in this case, where Batdorf failed to disclose his claim for breach of license agreement to the bankruptcy court, and then failed to amend his bankruptcy petition until after Athens Archery raised the issue of judicial estoppel in its amended answer. Batdorf's estoppel from asserting this claim obviates the need to address the claim on the merits.

## CONCLUSION

For the reasons stated above, the Court concludes that there is no genuine dispute as to any material fact, and that the defendant is entitled to judgment as a matter of law. Accordingly, Athens Archery's motion for summary judgment (Doc. 34) is **GRANTED.**

**DONE** and **ORDERED** this 8th day of May, 2014.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE